Case:10-12007-SDB Doc#:332 Filed:01/24/14 Entered:01/24/17

**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Augusta, Georgia
By mfox at 3:59 pm, Jan 24, 2014

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 CASE |
| | ) | NO. <u>10-12007-SDB</u> |
| LAWRENCE McCONNEOL WILEY | ) | |
| | ) | |
| Debtor | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| DEERE CREDIT, INC. | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAWRENCE McCONNEOL WILEY | ) | |
| | ) | |
| Respondent | ) | |

### <u>OPINION AND ORDER DENYING DEERE CREDIT'S MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE</u>

This matter is before me on the Motion for Allowance of Administrative Expenses ("Motion") filed by Deere Credit, Inc. in this confirmed chapter 11 case. (ECF No. 297). Lawrence McConneol Wiley (the Debtor) is an individual; his plan was confirmed on March 3, 2012. In the present Motion, filed over a year after the order confirming the plan, Deere Credit now seeks to recover $96,944.27 as a § 503(b)(1)(A) administrative expense for the Debtor's postpetition prerejection retention of a leased 2008 Hitachi ZX650 Excavator ("Excavator"). The Debtor opposes the

Motion on the grounds that it is both untimely and filed in contravention of the terms of the confirmed plan.

A hearing was held, after which I took the matter under advisement and asked the parties to submit briefs addressing: 1) the extent to which the Debtor's intermittent use of the Excavator during the pendency period provided a benefit to the estate; and 2) the effect of confirmation of a chapter 11 plan on the "timeliness" of a request for payment of administrative expenses filed under 11 U.S.C. §503(a).

After reviewing the facts of the case and the parties' briefs, I find that Deere Credit's Motion is untimely, filed in contravention of the terms of the confirmed Plan, and no cause exists to allow the late-filed motion to allow this administrative expense. I, therefore, do not reach the question of extent to which the Debtor's sporadic use of the Excavator qualifies as an actual, necessary cost of preserving the estate. For this reason, and those that follow, Deere Credit's Motion for Allowance of Administrative Expenses is denied.

## Jurisdiction

When, in a chapter 11 case, a bankruptcy court issues an order confirming a reorganization plan, that court retains postconfirmation jurisdiction to complete any action pertinent to the plan. See 11 U.S.C. §1142(b); Alderwoods Grp., Inc. v. Garcia, 682 F.3d 958, 969-70 (11th Cir. 2012). In the present

2

case, the Debtor's confirmed plan specifically provides for the bankruptcy court's continued jurisdiction. (See Am. Ch. 11 Plan at 3-4, ECF No. 217). I have jurisdiction to enter a final order in this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a) and (b)(2)(A).

## FINDINGS OF FACT

Lawrence Wiley, d/b/a Wiley's Welding or Wiley Brothers, is the sole proprietor of a grading and hauling land development business. The business of grading and hauling requires the use of heavy machinery, such as wheel loaders, excavators, and bulldozers.

In March 2008, Mr. Wiley leased the Excavator from Deere Credit, Inc. ("Deere Credit").[1] Under the terms of the lease and its modifications, the Debtor was required to make monthly payments of $10,204.66 for 23 months, followed by four monthly payments of $14,430.77. The purchase option available at the end of the lease term was $209,500.00.

The Debtor filed for chapter 11 relief as an individual on August 31, 2010 ("Petition Date"). The Debtor did not reject

---

[1] In addition to the Excavator lease, the Debtor also financed the purchase of four other pieces of heavy machinery from John Deere Construction & Forestry Company ("John Deere"). Deere Credit and John Deere were represented by the same lawyer in this case. Counsel negotiated the terms of the March 24, 2012, stipulation on behalf of John Deere and Deere Credit. Since confirmation of the Plan in March 2012, Deere Credit took over the administration of John Deere's claims. (See Consent Order on Motion to Am. Payment Terms under Confirm. Plan ¶ 1, ECF No. 312)(". . . John Deere Construction & Forestry Company, now Deere Credit Inc., hereafter collectively referred to as Deere . . .").

the Excavator lease in his petition. At the time of the bankruptcy filing, the prepetition cure amount on the lease was $109,516.69.

On September 14, 2010, Deere Credit filed a motion to lift stay, which was later amended on November 16, 2010, to include a prayer that the Court set a date by which the Debtor was to assume or reject the lease. At a hearing on November 30, 2010, Deere Credit agreed to continue its motion for stay relief to allow the parties time to arrange an assumption of the Excavator lease, or alternatively, negotiate the sale of the Excavator to the Debtor.

During their negotiations, the Debtor agreed to pay Deere Credit $10,000 a month for the use of the Excavator during the pendency period. Although the Debtor expressed his intention to assume the Excavator lease, the prepetition cure amount posed a significant financial obstacle. Accordingly, the Debtor sought instead to purchase the Excavator as part of a package deal along with four other pieces of heavy machinery in which John Deere held a security interest. (See Footnote 1).

Both parties agree the Debtor made seven monthly payments of $10,000 to Deere Credit from December 2010 to July 2011. According to the Debtor, but contested by Deere Credit, the parties agreed to reduce the monthly payments due on the Excavator to $3,720.20 as part of the deal to purchase the

Excavator and finance all five pieces of heavy machinery with John Deere and Deere Credit. According to the Debtor, the parties agreed the Debtor would pay Deere Credit a total monthly payment of $8,500 for the all equipment.

From September to November 2011, the Debtor made three monthly payments of $8,500 to Deere Credit; the amount attributable to payment of the Excavator lease was not separately identified. Deere Credit accepted these payments, but applied them to the amounts owed to John Deere on account of the four financed machines. Thus, the parties disagree regarding the amount paid on the Excavator lease during the pendency period; the Debtor maintains he paid $81,160.60, while Deere Credit puts the figure at $70,000.

On October 18, 2011, the Debtor submitted his first plan of reorganization and disclosure statement. "Exhibit A" to the disclosure statement listed Deere Credit's Excavator lease as a $204,000 secured claim and proposed to purchase the Excavator outright for $236,633.49. On November 11, Deere Credit filed an objection both to the disclosure statement's classification of its claim as a purchase contract and to the Debtor's proposed valuation of the Excavator.

At a hearing on November 17, after it had become apparent the parties would not agree on a sale price for the Excavator, Deere Credit requested the Court set December 16 as

5

the deadline for the Debtor to assume or reject the Excavator lease. At the December hearing, the Debtor rejected the lease. The Court ordered the Debtor to surrender the Excavator by January 30, 2012; the Debtor complied.

From the Petition Date until the entry of the Order Confirming the Plan on March 28, 2012, Deere Credit and John Deere were among the most active litigants of the Debtor's thirty-four creditors. Together, Deere Credit and John Deere participated in thirteen hearings (ECF Nos. 91, 127, 141, 157, 178, 190, 204, 209, 214, 230, 236, 259, and 273), were the subjects of twelve court orders (ECF Nos. 94, 95, 149, 150, 158, 179, 191, 205, 210, 231, 237, and 272), and were the movant or objecting party in three motions (ECF Nos. 26, 27, and 115) and three objections to the disclosure statement and Plan confirmation (ECF Nos. 225, 226, and 253).

Through its active participation in the confirmation process, Deere Credit had actual knowledge of the Plan's proposed allowance of administrative expenses, which did not include Deere Credit. Still, Deere Credit did nothing to assert any right to payment for such administrative expenses. It was also aware that similarly situated creditors had requested and received administrative expense priority for postpetition, prerejection lease payments. (See App. for Admin. Exp. filed on behalf of Hitachi Capital Am. Corp., ECF No. 164, Feb. 8, 2011).

The Debtor listed entities asserting administrative expenses and the actual and estimated amounts of those expenses on Exhibit D of his disclosure statement. Deere Credit was listed as holding a secured claim on the Excavator and an unsecured claim for prepetition arrearages on the Excavator lease. Deere Credit's objection to the disclosure statement (ECF No. 226) objects to the proposed treatment as secured and unsecured claims on the exhibits to the disclosure statement, but does not assert any administrative expenses.

Ultimately, John Deere and Deere Credit were able to resolve their objections to the Plan by a stipulation incorporated into the plan by reference in the Confirmation Order. (Stip. by John Deere Const. & Forestry Co. and Debtor, ECF No. 272). The stipulation specifically comprehends the Excavator lease at issue in this case, but makes no mention of any outstanding administrative expense payments. Instead, Deere Credit elected to pursue only its § 365(g) damages: "Deere Credit, Inc. is entitled to amend its Proof of Claim Nos. 35 and 36, subject to objection by Debtor, for any lease rejection damages to be paid pursuant to Class 4 as general unsecured claims." (ECF No. 272). The stipulation further provides: "[t]his Stipulation fully resolves any outstanding limited objection by John Deere Construction & Forestry Company (Docket #253) to the Debtor's Chapter 11 Plan and this Stipulation is incorporated

7

herein." Based on the terms of this stipulation, Deere Credit withdrew its objection; and, the Court entered an Order Confirming the Plan on March 28, 2012. (ECF No. 274).

On April 11, 2013, more than sixteen months after the Excavator lease's rejection and over a year following the confirmation order, Deere Credit filed the motion requesting payment of $96,944.27 for the Debtor's postpetition prerejection use and possession of the Excavator. (ECF No. 297). Despite the intervening months, Deere Credit now claims its request for payment is timely as the Court did not set an independent bar date for administrative expenses.

## CONCLUSIONS OF LAW

### I. § 503(a) "Timeliness"

The outcome of this case turns on the meaning of "timely" in Section 503(a) and the binding effect of plan confirmation under § 1141(a) of the Bankruptcy Code. 11 U.S.C. §§ 503(a) and 1141(a). Section 503(a) provides "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such a request if permitted by the court for cause." Section 1141(a) provides, in relevant part, "the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor. . . whether or not the claim or

8

interest of such creditor. . . is impaired under the plan and whether or not such creditor. . . has accepted the plan. 11 U.S.C. § 1141(a).

Although the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure set out with great particularity the procedures for filing proofs of claims and the manner in which they are allowed, the same detail is lacking for payment of administrative expenses. See 4-503 Collier on Bankruptcy ¶ 503.02 (16th ed. rev. Sept. 2013). The legislative history indicates a congressional intent to defer to the Bankruptcy Rules the task of filling in the particulars as to "the time, the form, and the method of such a filing." H.R. Rep. No. 595, 95th Cong., 1st Sess. 355 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 66 (1978). The Rules do not specify time limits for allowance of administrative expenses, leaving the meaning of "timeliness" to the bankruptcy courts to consider on a case by case basis. However, generally, a motion for allowance of a preconfirmation administrative expense, filed with sufficient time to allow notice and a hearing, prior to the balloting on a plan in a chapter 11 case would certainly qualify as "timely."

Administrative expenses are not claims as contemplated in 11 U.S.C. § 502 "Allowance of Claims." Courts that have considered the distinction between administrative expenses and claims overwhelmingly hold that the Federal Rules of Bankruptcy

9

Procedure governing proofs-of-claim do not apply to a request for payment of § 503(b) administrative expenses. See Beasley Forest Prods. v. Durango Georgia Paper Co. (In re Durango Georgia Paper Co.), 297 B.R. 326, 329 (Bankr. S.D. Ga. 2003). Accordingly, a request for payment of administrative expenses is not subject to the time limits provided in Bankruptcy Rules 3002 and 3003. See In re Atcall, 284 B.R. 791, 798 (Bankr. E.D. Va. 2002).

Since the Rules do not provide explicit time limits, bankruptcy courts have interpreted the word "timely" in conjunction with the phrase "or may tardily file such a request if permitted by the court for cause" to provide the statutory authority to set and enforce administrative expense bar dates. See 4-503 Collier ¶ 503.02[2]. The administrative expense deadline stems from the policy that "'[i]t is essential that administrative [expenses], which are entitled to first priority in a bankruptcy distribution, be established with finality before any distribution may be made to any subordinate classes of creditors.'" In re LTV Steel Co., Inc., 288 B.R. 775, 779 (Bankr. N.D. Ohio 2002)(quoting In re Holywell Corp., 68 B.R. 134, 137 (Bankr. S.D. Fla. 1986)). A request for payment of an administrative expense is "timely" so long as it does not undermine the "institutional means of ensuring the sound administration of the bankruptcy estate." See In re marchFirst, 448 B.R. 499, 507 (Bankr. N.D. Ill. 2011); In re Centurion Health

of Carrollwood Inc., 177 B.R. 371, 373-74 (Bankr. M.D. Fla. 1994)(granting request for postconfirmation payment of administrative expenses as "timely" in a chapter 11 total liquidation case when the plan created a special reserve fund for payment of administrative expenses to avoid negatively impacting the rights of unsecured creditors).

Even when the court has not set a deadline for filing a request for payment of administrative expenses, "timeliness" under § 503(a) provides a judge with the discretion to deny a request for payment of administrative expenses filed so late in the case as to risk prejudicing other, more attentive, parties in interest. Such an untimely request is not simply barred; rather, the court may consider the cause of the late filing. See Colo. Mount. Express, Inc. v. Aspen Limo. Serv., Inc. (In re Aspen Limo. Serv., Inc.), 193 B.R. 325, 338 (D. Colo. 1996)("[a]n administrative claim filed without cause just minutes before a confirmation hearing is set to commence is untimely, particularly where the lawsuit upon which the claim is based had been filed 'months prior'").

When, as in the present case, the Court has not set an administrative expense request bar date, the time for filing a request for payment of administrative expenses does not continue indefinitely. Rather, confirmation of a plan for reorganization acts as a "timeliness" bar precluding requests for payment of

preconfirmation administrative expenses which could have been addressed preconfirmation. See Holstein v. Brill, 987 F.2d 1268, 1270 (7th Cir. 1993); In re Eagle-Picher Indus., Inc., 216 B.R. 611, 615-17 (Bankr. S.D. Ohio 1997)(creditor could not file administrative expense request for preconfirmation expenses after chapter 11 plan confirmation); In re Ohio River Steel Corp., 65 B.R. 92, 94 (Bankr. W.D. Ky. 1986)(request for compensation for professional services should be asserted prior to confirmation of plan). Once a plan is confirmed, the terms of the plan control the "timeliness" of postconfirmation claims and requests for administrative expense payment. See In re Centurion Health, 177 B.R. at 373.

### II. § 1141(a) Binding Effect of the Confirmed Plan

Even absent an explicit administrative expense request bar date, it is the binding effect of confirmation which renders Deere Credit's Motion not timely. Upon Confirmation, the rights of a party in interest are "based upon whatever treatment is accorded to it in the plan itself." See IRT Partners, L.P. v. Winn-Dixie Stores, Inc. (In re Winn-Dixie Stores, Inc.), 639 F.3d 1053, 1056 (11th Cir. 2011)(quoting Holstein v. Brill, 987 F.2d at 1270-71).

The binding effect of a confirmed plan is "premised on the notion that the bankruptcy court has addressed in the

12

confirmed plan and order only those issues that are *properly* within the scope of the confirmation hearing." Kaiser Aerospace and Elecs. Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.), 244 F.3d 1289, 1298 (11th Cir. 2001)(quoting Russo v. Seidler (In re Seidler), 44 F.3d 945, 948 (11th Cir. 1995)). The confirmation process in a chapter 11 case is primarily an inquiry into the viability of the proposed plan and the disposition of the debtor's assets. See 11 U.S.C. § 1129(a). Facts relating to these criteria are *necessarily* put at issue by the confirmation process. 11 U.S.C. § 1129(a); see In re Piper Aircraft Corp., 244 F.3d at 1299. A bankruptcy court cannot confirm a plan until these issues are resolved; and, once resolved, the terms of a confirmed plan are binding on all parties. See Claremont McKenna Coll. V. Asbestos Settlement Trust (In re Celotex Corp.), 613 F.3d 1318, 1322 (11th Cir. 2010)

Here, the stipulation, as part of the confirmed Plan, settles all issues regarding the payment, priority, and treatment of Deere Credit's claims and rights to payment under the Plan. The negotiated terms of the stipulation settle the claim and determine its priority: "Deere Credit, Inc. is entitled to amend its Proof of Claim Nos. 35 and 36, subject to objection by Debtor, for any lease rejection damages to be paid pursuant to Class 4 as general unsecured claims." (ECF No. 272). This stipulation was incorporated by reference into the Plan.

13

Consequently, Deere Credit's present Motion is in contravention to the terms of the confirmed Plan.

The confirmed Plan establishes the payment and priority terms to which entities with allowed administrative expenses are entitled. The Debtor's Creditors, including Deere Credit, relied on the negotiated terms of the proposed plan and disclosure statements to make an informed decision on how to best protect their interests.

Deere Credit cites In re Atcall to support its contention that, in the absence of a separately set deadline, all requests for administrative expenses are "timely" under § 503(a). See 284 B.R. at 798. Deere Credit mischaracterizes the circumstances in Atcall as "this exact issue following an entry of a chapter 11 confirmation order." (See Case No. 99-16016-RGM, E.D. Va. 2002). Unlike the present case, there was never a confirmed plan in Atcall. The Atcall case began as an involuntary chapter 7, converted to a chapter 11, then converted back to chapter 7 before the Debtor even proposed a plan of reorganization much less had a plan confirmed. (Order Grant. Mot. to Convert Case from Ch. 11 to Ch. 7, ECF No. 107). The Court in Atcall faced the task of determining the procedure for allowing and paying chapter 11 administrative expenses in cases converted to chapter 7. Id. at 791. The Court determined requests for chapter 11 administrative expenses filed after the case converted

to chapter 7 were "timely" because they were filed before an established bar date. The Atcall Court reasoned: "[j]ust as there is no bar date for objections to timely filed proofs of claims implied in a bar date for filing proofs of claims, there should be no deadline for obtaining approval of a request for payment absent a separately set deadline." In re Atcall, 284 B.R. at 798. This reasoning may be valid in the absence of a confirmed plan. However, in the present case, Deere Credit's reliance on this case is misplaced as the binding effect of the confirmed Plan bars creditors from raising preconfirmation issues which could have been addressed preconfirmation.

Deere Credit's postconfirmation request for administrative expense payments attempts to make an end run around the provisions of the confirmed Plan. See In re Winn-Dixie, 639 F.3d at 1055-57. If allowed, Deere Credit's administrative expense would derail the Plan, making it unfeasible and altering the distributions to remaining creditors. Id. Due to the requirements of § 1129(a)(9), granting Deere Credit's request for payment would have the effect of modifying the confirmed plan. See Holstein v. Brill, 987 F.3d at 1270. Modification of a confirmed and substantially consummated plan is precluded except to the limited extent § 1127 permits. Id. Finally, granting Deere Credit's current request would jeopardize the Plan's success by imposing an immediate obligation to pay

15

$96,944.27. See 11 U.S.C. §1141(a)(9). Accordingly, Deere Credit is barred from requesting payment for administrative expenses by the binding effect of the Debtor's confirmed plan.

### III. Deere Credit Has Not Shown Cause to Allow its Tardy Filing

A request for postconfirmation administrative expenses, known and available to its holder before confirmation, but only filed subsequent to the creditors voting on the plan, cannot be considered timely; if it is to be allowed at all, it must be "for cause." See In re Ohio River Steel Corp., 65 B.R. at 94. Deere Credit has not presented any facts or arguments to excuse its tardy request, nor can I see any which would justify its delay. See In re Southern Value Homes, Inc., 2008 WL 7874264 (Bankr. N.D. Ga. 2008)(denying allowance of an administrative expense when the untimely request did not include any explanation or facts to constitute cause for the untimely filing); In re Wilder, 225 B.R. 600 (Bankr. D.S.C. 1997)(finding a claim was not allowable as § 503(b)(1)(a) administrative expense given creditor's delay in filing claim).

If a timely request is not filed, or the court denies the right to file a tardy request, the administrative expense is waived. See Hayes Lemmerz Int'l, Inc. v. Epilogics Grp., 531 F. Supp. 2d 789, 803 (E.D. Mich. 2007), aff'd, 2009 WL 306732 (Fed. Cir. 2009)(creditor waived right to recover administrative

16

expense by failing to file administrative expense request with the bankruptcy court during the allotted time period); In re Eagle-Picher Indus., Inc., 216 B.R. at 619 (creditor could not file administrative expense request for preconfirmation expenses after order confirming chapter 11 plan as creditor had actual notice of bankruptcy).

### ORDER

Based on the foregoing Findings of Fact and Conclusions of Law, Deere Credit's Motion for Allowance of Administrative Expense is **ORDERED DENIED**.

```
_____
JOHN S. DALIS
United States Bankruptcy Judge
```

Dated at Brunswick, Georgia, this 24 day of January, 2014.